IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

TAEYAN RAYMOND WILLIAMS,

*Defendant-Appellant.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT

———————————

**OPENING BRIEF OF APPELLANTS**

———————————

Alfred Guillaume III
LAW OFFICES OF
ALFRED GUILLAUME III
6305 Ivy Lane
Suite 700
Greenbelt, MD 20770
202-321-0549
ag3law@gmail.com

*Counsel for Appellant*
  *Taeyan Williams (23-4658)*

Brent E. Newton
ATTORNEY AT LAW
19 Treworthy Road
Gaithersburg, MD 20878
202-975-9105
brentevannewton@gmail.com

*Counsel for Appellant*
  *Scott Williams (23-4595)*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION......................................................... 1

STATEMENT OF THE ISSUES............................................................. 2

STATEMENT OF THE CASE................................................................ 3

    I.     Procedural Background ........................................................... 3

    II.    Statement of the Facts............................................................ 4

SUMMARY OF THE ARGUMENT ...................................................... 6

ARGUMENT ....................................................................................... 7

Issue One: The evidence was insufficient to convict Taeyan Williams of possessing with intent to distribute the drugs found in Scott Williams's home.................................................................................................. 7

    A.    Standard of Review: Sufficiency of the Evidence ................................ 7

    B.    The government's evidence was insufficient to establish that the drugs found in Scott Williams's home also belonged to Taeyan Williams................................................................................. 8

Issue Two: The district court erred by denying Scott Williams's motion to suppress evidence based on police officers' failure to knock and announce before entering his home to execute a search warrant ...................... 10

    A.    Standard of Review ........................................................... 10

    B.    Suppression of Evidence Is the Appropriate Remedy for a Violation of the Statutory Knock-and-Announce Rule...................... 11

Issue Three: This Court should remand to the district court to decide whether to apply the newly promulgated USSG § 4C1.1 to Appellant Scott Williams.................................................................................................15

    A.   Standard of Review ...........................................................................15

    B.   This Court Should Remand to the District Court to Decide Whether to Apply USSG § 4C1.1 to Appellant Scott Williams.........16

Issue Four: The district court's conditions of supervision requiring substance abuse treatment and mental health counseling unconstitutionally delegate to the probation officer discretion to require in-patient treatment ...............................................................................19

    A. Standard of Review ................................................................................19

    B. The District Court's Conditions Affording the Probation Officer Discretion to Require In-Patient Substance Abuse Treatment and Mental Health Treatment Are Unconstitutional ....................................20

CONCLUSION......................................................................................................23

REQUEST FOR ORAL ARGUMENT .................................................................23

# TABLE OF AUTHORITIES

## Cases

*Corley v. United States,*
556 U.S. 303 (2009) ........................................................ 13

*Hudson v. Michigan,*
547 U.S. 586 (2006) .............................................. 6, 11, 12

*Miller v. United States,*
357 U.S. 301 (1958) ................................................ 11, 12

*Rodriguez de Quijas v. Shearson/American Express, Inc.,*
490 U.S. 477 (1989) ........................................................ 14

*Sabbath v. United States,*
391 U.S. 585 (1968) ........................................................ 12

*Sanchez-Llamas v. Oregon,*
548 U.S. 331 (2006) ........................................................ 13

*United States v. Beene,*
818 F.3d 157 (5th Cir. 2016) ........................................ 14

*United States v. Bolton,*
858 F.3d 905 (4th Cir. 2017) ........................................ 18

*United States v. Claybron,*
88 F.4th 1226 (7th Cir. 2023) ...................................... 19

*United States v. Engle,*
676 F.3d 405 (4th Cir. 2012) .......................................... 8

*United States v. Ferguson,*
252 F. App'x 714 (6th Cir. 2007) .................................. 13

*United States v. Martinez,*
987 F.3d 432 (5th Cir. 2021) ........................................ 22

*United States v. Matta,*
777 F.3d 116 (2d Cir. 2015) .......................................... 22

*United States v. Mike,*
632 F.3d 686 (10th Cir. 2011) ...................................... 22

*United States v. Mullin,*
    329 F.2d 295 (4th Cir. 1964) ........................................................ 11, 12

*United States v. Nishida,*
    53 F.4th 1144 (9th Cir. 2022) ...................................................... 21, 22

*United States v. Palomino-Coronado,*
    805 F.3d 127 (4th Cir. 2015) ............................................................. 8

*United States v. Rogers,*
    961 F.3d 291 (4th Cir. 2020) .................................. 15-16, 19, 20, 21

*United States v. Rusher,*
    966 F.2d 868 (4th Cir. 1992) ......................................................... 10

*United States v. Shields,*
    519 F.3d 836 (8th Cir. 2008) ......................................................... 19

*United States v. Singletary,*
    984 F.3d 341 (4th Cir. 2021) ...................................................... 20-21

*United States v. Young,*
    609 F.3d 348 (4th Cir. 2010) ......................................................... 14

*Wilson v. Arkansas,*
    514 U.S. 927 (1995) ...................................................................... 12

## Statutes

18 U.S.C. § 3109 .......................................................................... *passim*

18 U.S.C. § 3231 ................................................................................. 1

21 U.S.C. § 848 ................................................................................ 17

28 U.S.C. § 994 ................................................................................ 16

28 U.S.C. § 1291 ................................................................................. 1

## Other Authorities

Fed. R. App. P. 4 ................................................................................. 1

U.S. Sent'g Comm'n, Retroactivity Amendment (November 1, 2023) ................ 17

USSG § 2D1.1 ............................................................................. 17, 18

USSG § 2H1.1 ................................................................ 16

USSG § 3A1.1 ................................................................ 17

USSG § 3A1.4 ................................................................ 16

USSG § 3A1.5 ................................................................ 17

USSG § 3B1.1 ................................................................ 17

USSG § 4C1.1 ........................................................... *passim*

USSG § 5C1.2 ................................................................ 18

# STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1291.  On September 1, 2023, Appellant Taeyan Raymond Williams filed a timely notice of appeal pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure.  JA2586.[1]  On August 24, 2023, Scott Anthony Williams filed a timely notice of appeal pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure.  JA2596. The district court had jurisdiction under 18 U.S.C. § 3231.

---

[1] The joint appendix on appeal is abbreviated as "JA."  Volumes 1 through 5 are unsealed; Volume 6 is sealed.

# STATEMENT OF THE ISSUES

## Appellant Taeyan Williams

1. Whether the evidence was sufficient to convict Appellant Taeyon Williams of possession with intent to distribute the controlled substances found in Scott Williams home on June 6, 2018.

## Appellant Scott Williams

1. Whether the district court erred by denying Appellant Scott Williams's motion to suppress evidence based on law enforcement officers' failure to knock and announce before entering his home to execute a search warrant.

2. Whether this Court should remand to the district court to decide whether to apply the newly promulgated USSG § 4C1.1 to Appellant Scott Williams.

3. Whether the district court's conditions of supervision requiring substance abuse treatment and mental health counseling for Appellant Scott Williams unconstitutionally delegate to the probation officer discretion to require in-patient treatment.

# STATEMENT OF THE CASE

## I.    Procedural Background

On September 29, 2021, a federal grand jury returned a second superseding indictment charging both appellants, Scott Williams and Taeyan Williams, with six offenses: (1) conspiracy to distribute and possess with intent to distribute controlled substances; (2) conspiracy to interfere with interstate commerce by robbery and extortion; (3)  interference with interstate commerce by robbery and extortion; (4) kidnapping with death resulting; (5) possessing, using, carrying, and brandishing a firearm in furtherance of a crime of violence and a drug-trafficking crime; and (6) possession with intent to distribute a controlled substance.  JA96. The second superseding indictment additionally charged Appellant Scott Williams with three additional offenses: (1) possession with intent to distribute a controlled substance; (2) possession of a firearm in furtherance of a drug-trafficking crime; and (3) conspiracy to destroy and conceal evidence.  JA103.

On April 25, 2023, the district court (the Honorable Theodore D. Chuang, presiding) conducted a jury trial.  JA355.  After a 12-day trial, the jury returned a verdict finding both appellants not guilty of four jointly-charged offenses: (1) conspiracy to interfere with interstate commerce by robbery and extortion; (2) interference with interstate commerce by robbery and extortion; (3) kidnapping with death resulting; and (4) possessing, using, carrying, and brandishing a firearm

in furtherance of a crime of violence and a drug-trafficking crime.  The jury also found Appellant Scott Williams not guilty of the additional charge of possessing a firearm in furtherance of a drug-trafficking offense.  However, the jury found both appellants guilty of (1) conspiracy to distribute and possess with intent to distribute controlled substances and (2) possession with intent to distribute a controlled substance.  The jury additionally found Appellant Scott Williams guilty of (1) possession with intent to distribute a controlled substance and (2) conspiracy to destroy and conceal evidence.  JA2486.

On August 22, 2023, the district court sentenced Appellant Scott Williams to 276 months in federal prison to be followed by five years of supervised release, as well as a $400 special assessment.  JA2573.  On August 23, 2023, the district court sentenced Appellant Taeyan Williams to 150 months in federal prison to be followed by five years of supervised release, as well as a $200 special assessment.  JA2586.

## II.    Statement of the Facts

At the two appellants' joint jury trial, the government called 38 witnesses.  JA355.  Neither appellant called any witnesses or testified, but Appellant Scott Williams offered some exhibits and a stipulation.  JA2108.

The government's evidence focused on two things – first, the two appellants' alleged abduction and murder of Noah Smothers, with whom appellants

allegedly worked in supplying drugs to customers on college campuses; and, second, the evidence of illegal drugs and firearms recovered from Appellant Scott Williams's home discovered during the execution of a search warrant.

The vast majority of the government's witnesses testified about the alleged abduction and murder of Smothers.  Because the jury acquitted both appellants of the charges related to the alleged abduction and murder (JA2486), this brief will not address that evidence.

Five witnesses testified regarding the evidence of drugs, currency, firearms, and other items seized by law enforcement officers from Appellant Scott Williams's home on June 6, 2018.  Lt. John Monarek of the Maryland State Police, testified about evidence of drugs, currency, and drug-trafficking paperwork found in Appellant Scott Williams's bedroom. JA489.  Kelly Sexton, a crime scene technician with the Maryland State Police, testified about drugs recovered in various places in Appellant Scott Williams's home, including in appellant's bedroom and the upstairs bathroom, in the basement, and in a backyard shed. JA510.  David Sexton, an officer with the Maryland State Police, testified about drugs and currency found in Appellant Scott Williams's bedroom as well as in the basement area.  JA544. Sgt. Kyles Simms of the Maryland State Police testified about drugs recovered from Appellant Scott Williams's home and also testified

about the custodial statement that Scott Williams gave during the time that officers were executing the search warrant.  JA621.

## SUMMARY OF THE ARGUMENT

First, the evidence was not sufficient to convict Appellant Taeyan Williams of possession with intent to distribute the drugs found in Scott Williams's home during the execution of a search warrant on June 6, 2018.  The evidence at trial did not establish that Taeyan Williams resided in the home nor whether the drugs found in different rooms throughout the home were reasonably foreseeable to him.

Second, the district court erred by denying Appellant Scott Williams's motion to suppress the evidence seized from his home because the officers failed to knock and announce their presence and purpose before forcibly entering his home.  Although a violation of the Fourth Amendment knock-and-announce rule does not require suppression of evidence as a remedy – as a result of the Supreme Court's decision in *Hudson v. Michigan*, 547 U.S. 586 (2006) – a violation of the statutory knock-and-announce rule (18 U.S.C. § 3109) does require suppression under Supreme Court and Fourth Circuit precedent unaffected by *Hudson*.  This Court should remand with instructions for the district court to determine whether the exigent circumstances exception justified the officers' failure to have knocked and announced before entering Appellant Scott Williams's home – an issue unresolved by the district court.

Third, this Court should remand to the district court to decide whether to apply the newly promulgated USSG § 4C1.1, which reduces a defendant's final offense level by two levels if the defendant has zero criminal history points and satisfies nine additional criteria set forth in that new guideline. That new guideline became effective after Appellant Scott Williams's sentencing hearing and also has been applied retroactively by the U.S. Sentencing Commission. It is appropriate for this Court on this direct appeal to remand to the district court to determine whether Appellant Scott Williams qualifies for a two-level reduction under the new guideline and whether the court wishes to exercise its discretion to apply it.

Fourth, the district court's conditions of supervision requiring substance abuse treatment and mental health counseling, as clarified in the court's written judgment, unconstitutionally delegated to the probation officer discretion to require in-patient treatment. This Court should remand with directions to the district court to modify the substance abuse and mental health treatment conditions.

## ARGUMENT

**Issue One**: **The evidence was insufficient to convict Taeyan Williams of possessing with intent to distribute the drugs found in Scott Williams's home.**

### A.    Standard of Review: Sufficiency of the Evidence

"We review [a] challenge to the sufficiency of the evidence de novo, and we must sustain the verdict if there is substantial evidence, viewed in the light most

favorable to the government to support it." *United States v. Engle*, 676 F.3d 405 (4th Cir. 2012).

**B.    The government's evidence was insufficient to establish that the drugs found in Scott Williams's home also belonged to Taeyan Williams.**

In *United States v. Palomino-Coronado*, 805 F.3d 127 (4th Cir., 2015), this Court vacated the defendant's conviction, finding the evidence insufficient to support the conclusion that the defendant engaged in sexual activity with a minor for the purpose of producing a picture.   In *Palomino-Coronado*, the appellant contended that the government failed to prove the specific intent element of the statute for which he was charged.  This Court agreed, explaining that:

> Here, the evidence produced at trial does not support the conclusion that Palomino-Coronado engaged in sexual activity with B.H. for the purpose of producing a picture. No direct evidence or statements indicating intent were offered. There was no testimony that Palomino-Coronado gave any instruction or direction to B.H. as part of their sexual encounter that would indicate purpose. All that the record shows is that Palomino-Coronado had engaged in sexual activity with B.H. on more than one occasion; that he had taken several non-sexually explicit pictures of her with his cell phone in his basement; and that one sexually explicit picture was taken, in which B.H. identified herself and Palomino-Coronado as the two people depicted. Without more, these facts do not support the conclusion that Palomino-Coronado engaged in sexual activity with B.H. in order to take a picture.

*Id*. at 132.

In the instant case, no witness established that Taeyan Williams lived in the same home as Scott Williams.   Scott Williams's paramour, Patti Ann Chalplin,

resided with Scott Williams and testified that Taeyan Williams did not live in the home, but when he would visit would utilize a downstairs bedroom. JA676. Oscar Diaz, Taeyon Williams's childhood friend, testified that Taeyan Williams lived in an apartment in Morgantown, West Virginia, in 2017 and 2018. JA1674. Brandon Drummond, another childhood friend of Taeyan Williams, testified that he was uncertain whether Taeyan lived in "[e]ither West Virginia, or his parents' house." JA1715. Mr. Drummond testified that the parents' house was in Columbia or Laurel, Maryland. JA1717. Initially, he testified that he was unsure whether he had been to the home, but later conceded that he visited a home associated with Taeyan Williams' family in Maryland. JA1717. Lastly, Connor Cox, a former associate of Taeyan Williams from West Virginia, testified that he believed Taeyan Williams lived at a fraternity house in West Virginia, before moving to a local hotel. JA1250. Mr. Cox testified that he traveled with Taeyan Williams from West Virginia to Maryland to pick up marijuana from a house he believed belonged to someone in Taeyan's family. JA1255-1256. In short, none of these witnesses, most of whom had a close personal relationship with Taeyan Williams, established that he lived in Scott Williams's home at any time, much less in June 2018 when law enforcement recovered drugs from Scott Williams's home.

Even viewing the evidence in the light most favorable to the government, no reasonable juror could find that the drugs found throughout Scott Williams's home

on June 18, 2018, belonged to Taeyan Williams or were reasonably forseeable to him.  While there was some testimony that Taeyan Williams may have visited his father's home at some point, there was insufficient evidence to determine whether he was living in the home when it was searched by law enforcement in June 2018. For these reasons, Taeyan Williams's conviction on Count 6 should be vacated, as no reasonable juror could find that Taeyan Williams lived in the home where the drugs were located.  Assuming this Court agrees with Taeyan Williams on this argument, his case must be returned to district court for resentencing on Count One.

> **Issue Two: The district court erred by denying Scott Williams's motion to suppress evidence based on police officers' failure to knock and announce before entering his home to execute a search warrant.**

**A.   Standard of Review**

Because Mr. Williams filed a pretrial motion to suppress which raised this legal issue in the court below, JA117 – which the district court addressed on the merits in denying that motion, JA130 (footnote 1) – this Court should engage in *de novo* review of the issue on appeal.  *See United States v. Rusher*, 966 F.2d 868, 873 (4th Cir. 1992).

**B. Suppression of Evidence Is the Appropriate Remedy for a Violation of the Statutory Knock-and-Announce Rule.**

In his motion to suppress the evidence found by police officers during the execution of a search warrant at his home, Appellant Scott Williams contended that the officers' failure to knock and announce their presence and purpose before entering to execute the warrant violated both the Fourth Amendment and 18 U.S.C. § 3109.[2]   The district court disagreed, and ruled that suppression of evidence recovered during a search is an inappropriate remedy for violations of *both* the constitutional and statutory knock-and-announce rules. JA130 (footnote 1).   On appeal, Appellant Scott Williams contends that suppression is an appropriate remedy for a violation of the statutory knock-and-announce rule even though it is not such a remedy for a violation of the constitutional knock-and-announce rule.

In *Hudson v. Michigan*, 547 U.S. 586 (2006), a case arising in state court, the Supreme Court, while reaffirming its 1995 ruling that the Fourth Amendment generally requires officers to knock and announce before entering a suspect's home

---

[2] That statute provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." 18 U.S.C. § 3109.  The Supreme Court and this Court have interpreted that statute, originally enacted in 1917, to require suppression of evidence when officers failed to comply with it.  *See Miller v. United States*, 357 U.S. 301, 313-14 (1958); *United States v. Mullin*, 329 F.2d 295, 299 (4th Cir. 1964).

to execute a search warrant,[3] held that a suppression of evidence is not an appropriate remedy for a violation of the constitutional knock-and-announce rule. *Id.* at 599. However, the Court did *not* address whether, in federal criminal cases, a violation of § 3109's knock-and-announce rule generally requires suppression of evidence seized during the execution of a warrant inside a suspect's home. In prior cases – decided decades before the Supreme Court's 1995 decision in *Wilson* first held that the *Fourth Amendment* requires officers to knock and announce before entering a home to execute a search warrant – the Supreme Court and this Court held that a violation of § 3109 generally requires suppression when officers failed to knock and announce before entering a suspect's home.[4]

---

[3] *See Wilson v. Arkansas*, 514 U.S. 927, 931 (1995) ("An examination of the common law of search and seizure leaves no doubt that the reasonableness of a search of a dwelling under the Fourth Amendment] may depend in part on whether law enforcement officers announced their presence and authority prior to entering."). The Supreme Court in *Wilson* did not address whether suppression of evidence is an appropriate remedy for a violation of the Fourth Amendment knock-and-announce rule. *See id.* at 937 n.4.

[4] *See Miller v. United States*, 357 U.S. 301, 313-14 (1958) ("Congress, codifying a tradition embedded in Anglo-American law, has declared in § 3109 the reverence of the law for the individual's right of privacy in his house. . . . Because the petitioner did not receive that notice before the officers broke the door to invade his home . . . the evidence seized should have been suppressed."); *Sabbath v. United State*s, 391 U.S. 585, 588-90 (1968) (reaffirming *Miller*); *United States v. Mullin*, 329 F.2d 295, 299 (4th Cir. 1964) ("[W]e find that agent Carter in breaking into the smokehouse without first announcing his purpose and authority violated § 3109, and the evidence flowing from this illegal entry should have been suppressed.").

Those cases applying § 3109 were not overruled by *Hudson*, a Fourth Amendment case arising in a state court system rather than in federal court, which thus did not provide the Supreme Court with the opportunity to apply the federal statute. Indeed, in a decision rendered shortly after *Hudson*, the Supreme Court cited its decision in *Miller* without questioning whether its non-constitutional holding was affected by *Hudson*. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345-346 (2006). The Court in *Sanchez-Llamas* specifically described *Miller* as a "supervisory authority" decision. *Id.* at 346.[5] Therefore, the continuing validity of the § 3109 suppression remedy was *not* decided by the Court in *Hudson*. The pre-*Hudson* § 3109 precedent is still binding on the lower federal courts in federal criminal prosecutions.

Even assuming one can reasonably question whether *Hudson* casts doubt on the continuing validity of the "supervisory authority" suppression remedy under § 3109,[6] it is for the Supreme Court (not a lower federal court) to decide whether to

---

[5] Such extra-constitutional suppression remedies exist in other contexts. *See, e.g.*, *Corley v. United States*, 556 U.S. 303 (2009) (discussing the "*McNabb-Mallory*" extra-constitutional suppression remedy in federal criminal prosecutions).

[6] *See United States v. Ferguson*, 252 Fed. App'x 714, 719 (6th Cir. 2007) ("[T]he *Hudson* decision involved only a prosecution in state court and thus did not resolve the issue of the continuing viability of the exclusionary rule as a remedy for violations of 18 U.S.C. § 3109. There is room for disagreement regarding whether the exclusionary rule should remain available as a remedy for violations of § 3109.").

overrule the pre-*Hudson* § 3109 precedent. *See Rodriguez de Quijas v. Sheerson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). The district court thus erred by concluding that, "[b]ecause the Fourth Amendment reasonableness requirement is 'reflected in 18 U.S.C. § 3109,' any violation of this statute compels the same outcome [as the Fourth Amendment does, as interpreted by the Supreme Court in *Hudson*]." JA130 (footnote 1) (quoting *United States v. Young*, 609 F.3d 348, 353 (4th Cir. 2010)).[7]

Therefore, this Court should reaffirm that § 3109 generally requires suppression of evidence obtained during the execution of a search warrant when officers failed to knock and announce before entering a suspect's home to execute the warrant. However, Appellant Scott Williams acknowledges that a remand for additional proceedings on the unresolved "exigent circumstances" issue is required in his case.[8] If the district court, on remand, were to conclude that exigent

_____

[7] The district court's reliance on *Young* was misplaced. This Court in *Young* did not address whether the suppression remedy for a violation of § 3109 continues to exist after *Hudson*.

[8] In the court below, the government and Mr. Williams's counsel disagreed about whether the "exigent circumstances" exception applies to the knock-and-announce violation that occurred in this case. JA47, JA119-121, JA125-126. Because the

circumstances did not justify the officers' failure to knock and announce, then Appellant Scott Williams would be entitled to a new trial in view of the extensive evidence of drug-trafficking offered at trial that was tainted by the § 3109 violation.  In other words, the error clearly was not harmless in view of the extensive evidence seized from his home that was offered by the government during trial.

> **Issue Three: This Court should remand to the district court to decide whether to apply the newly promulgated USSG § 4C1.1 to Appellant Scott Williams.**

## A.    Standard of Review

Although normally this Court applies the plain-error standard to sentencing guideline issues raised for the first time on appeal, this Court should engage in *de novo* review of this issue because it arose *after* sentencing (which occurred several months before the effective date of USSG § 4C1.1).  *See United States v. Rogers*, 961 F.3d 291, 295 (4th Cir. 2020) ("The plain-error standard applies only if a

---

district court did not resolve that dispute – by instead holding, as a threshold matter, that there is no suppression remedy under § 3109, JA130 (footnote 1) – this Court should remand for the district court to address that issue in the first instance. *See, e.g.*, *United States v. Beene*, 818 F.3d 157, 165 (5th Cir. 2016) ("Whether exigent circumstances were present is a finding of fact to be made by the district court.  In this case, the district court did not make factual findings about whether exigent circumstances were present sufficient to justify a warrantless search under the automobile exception. . . .  Accordingly, we vacate the judgment of the district court and remand for further proceedings.") (citation and internal quotation marks omitted).

defendant has an opportunity to object in the trial court."). At the time of sentencing, § 4C1.1 was not yet in effect (because it was still subject to the 180-day congressional review required by 28 U.S.C. § 994(p)). Section 4C1.1 became effective on November 1, 2023 – over three months after sentencing occurred in this case.

### B. This Court Should Remand to the District Court to Decide Whether to Apply USSG § 4C1.1 to Appellant Scott Williams.

Section 4C1.1 provides a two-level downward adjustment for defendants if they satisfy the following 10 criteria:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and

(10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848 . . . .

USSG § 4C1.1(a)(1)-(10). After the new provision went into effect on November 1, 2023, the Commission designated the amendment as retroactive to defendants whose sentencing hearings occurred before November 1, 2023, effective on February 1, 2024.[9]

With the possible exception of one of those factors – § 4C1.1(a)(7) – Appellant Scott Williams appears to qualify for this two-level downward adjustment. *See* JA2614-2615, JA2616 (sealed) (Presentence Investigation Report ¶¶ 67-76, 83).[10] Regarding § 4C1.1(a)(7), it is not clear from the sentencing transcript whether the district court found by a preponderance of the evidence that Appellant Scott Williams actually possessed a firearm "in connection with" the drug-trafficking offenses when the court overruled his objection to USSG § 2D1.1(b)(1). The district court merely found that there is evidence that a firearm

---

[9] *See* U.S. Sent'g Comm'n, Retroactivity Amendment (Effective November 1, 2023), https://www.ussc.gov/guidelines/amendments/retroactivity-amendment-effective-november-1-2023.

[10] Although the PSR originally had included guideline enhancements related to the death of Noah Smothers, the district court sustained Appellant Scott Williams's objections to those enhancements. JA2524-2527.

was possessed in his home and that it was "not clearly improbable that it was connected to the offense." JA2532 (referring to Application Note 11(A) following § 2D1.1(b)(1)). Yet that finding is not the same as a finding by a preponderance of the evidence that Appellant Scott Williams did possess a firearm in connection with the offense.

In a closely analogous guidelines context, this Court has recognized that, "[w]hereas a defendant may be unable to show that any connection between a firearm and an offense is 'clearly improbable,' the same defendant might be able to prove 'by a preponderance of the evidence' that the firearm was not connected with the offense to satisfy [USSC] § 5C1.2(a)(2)." *United States v. Bolton*, 858 F.3d 905, 914 (4th Cir. 2017). Significantly, § 4C1.1(a)(7) is very similar to § 5C1.2(a)(2), the guidelines "safety valve" provision upon which § 4C1.1(a)(7) appears to have been modeled.[11]

Therefore, the district court did not find that that appellant failed to prove by a preponderance of the evidence that he "did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous

---

[11] *Compare* USSG § 4C1.1(a)(7) ("[T]he defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense[.]"), *with* § 5C1.2(a)(2) ("[T]he defendant did not . . . possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense[.]").

weapon (or induce another participant to do so) in connection with the offense[.]".

USSG § 4C1.1(a)(7). Therefore, this Court should remand to the district court so it has the opportunity to determine whether Appellant Scott Williams can satisfy the preponderance standard regarding § 4C1.1(a)(7) – which, if so, would render him eligible for a two-level reduction under the newly applicable § 4C1.1. If the district court finds that Appellant Scott Williams satisfies § 4C1.1(a)(7) (as well as the other criteria, which he appears to satisfy), then the court may exercise its discretion to resentence him.[12]

> **Issue Four**: **The district court's conditions of supervision requiring substance abuse treatment and mental health counseling unconstitutionally delegate to the probation officer discretion to require in-patient treatment.**

### A.    Standard of Review

Although Appellant Scott Williams did not raise this issue at sentencing, he had no opportunity to do so – because the district court added the objectionable language concerning two conditions of supervision for the first time in the court's written judgment entered after sentencing. Therefore, this Court should engage in *de novo* review. *See United States v. Rogers*, 961 F.3d 291, 295 (4th Cir. 2020).

---

[12] It is appropriate for this Court to remand for potential application of a new sentencing guideline that becomes effective only after a defendant's case is pending on direct appeal. *See, e.g.*, *United States v. Claybron*, 88 F.4th 1226, 1229-31 (7th Cir. 2023); *United States v. Shields*, 519 F.3d 836, 838 (8th Cir. 2008).

("The plain-error standard applies only if a defendant has an opportunity to object in the trial court.").

## B. The District Court's Conditions Affording the Probation Officer Discretion to Require In-Patient Substance Abuse Treatment and Mental Health Treatment Are Unconstitutional.

At the sentencing hearing, the district court orally pronounced the following conditions of supervision:

> You must participate in a mental health treatment program and follow the rules and regulations of that program, and the probation officer, in consultation with the treatment provider, will supervise your participation in the program. . . . You must also participate in a substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program.

JA2567.

In the court's written judgment entered after sentencing, the two conditions were similarly worded to the court's orally-pronounced conditions, except the following parenthetical was added after "participation in the program" (for both the substance abuse and mental health treatment conditions): "(provider, location, modality, duration, intensity, etc."). JA2577.[13]

---

[13] Such additional wording in the court's written judgment appears to have been a clarification of ambiguity in the court's prior oral pronouncement of those two conditions. Therefore, the written conditions, as clarified, did not violate Appellant Scott Williams's constitutional right to be present at sentencing. *See United States v. Rogers*, 961 F.3d 291, 299 (4th Cir. 2020) (a written condition that "may be construed fairly as a clarification of an otherwise vague oral pronouncement" does not violate a defendant's right to be present at sentencing).

The Ninth Circuit has recently addressed the constitutionality of these same two conditions[14] – as worded in the district court's written judgment – and held that they unconstitutionally delegate to a probation officer, a non-judicial officer, the authority to determine the "nature or extent" of a defendant's criminal punishment. *See United States v. Nishida*, 53 F.4th 1144 (9th Cir. 2022).

However, in the event that this Court disagrees with this description of the additions to the conditions in the written judgment – and concludes that the additions did more than merely clarify ambiguity in the court's orally-pronounced conditions – then the appropriate remedy would be to reverse Appellant Scott Williams's sentence and remand for a complete resentencing. *See Rogers*, 961 F.3d at 300-01 (additions to orally-pronounced discretionary conditions of supervision that go beyond merely clarifying ambiguity in the orally-pronounced conditions violate a defendant's right to presence at sentencing and require a complete resentencing); *see also United States v. Singletary*, 984 F.3d 341, 346 (4th Cir. 2021).

[14] In *Nishida*, the Ninth Circuit Court held that the following two conditions of supervised release were unlawful because they improperly delegated to a federal probation officer the ability to determine whether the defendant underwent inpatient treatment:

> . . . You must participate in a substance abuse treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program, such as provider, location, modality, duration, and intensity.

> . . . You must participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program, such as provider, location, modality, duration, and intensity.

*Nishida*, 53 F.4th at 1147-48, 1151-55; *id.* at 1156 (Nelson, J., dissenting) (quoting the conditions in full).

As the Ninth Circuit stated in *Nishida*:

> Nishida argues that by expressly giving the probation officer discretion over the "location, modality, ... and intensity" of her treatment [including the decision to order in-patient treatment], the district court gave the probation officer discretion to confine her to an inpatient facility. As discussed above, and as the Government concedes, this is the plain meaning of Nishida's treatment conditions. . . . Although a district court need not enumerate all unauthorized aspects of a treatment program when "delegating the administrative details of arranging the program to [a] probation officer," a condition that plainly read delegates to a nonjudicial officer the power to decide the "nature or extent of the punishment" cannot stand in our constitutional system.

*Id.* at 1155; *see also United States v. Martinez*, 987 F.3d 432, 435 (5th Cir. 2021) (district court may not delegate to the probation officer the discretion to order in-patient treatment); *United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015) (same); *United States v. Mike*, 632 F.3d 686, 695 (10th Cir. 2011) (same).

That reasoning is correct, and this Court should follow the same approach as the Ninth Circuit in *Nishida* and the other circuit courts cited above. The proper remedy is to remand to the district court to reword the two conditions to make it clear that the district court – not the probation officer – is to make the decision of whether to order in-patient treatment as part of any mental health or substance treatment required during supervised release.

## CONCLUSION

For the foregoing reasons, regarding Appellant Taeyan Williams, this Court should reverse his conviction for possession with intent to distribute the controlled substances found in Scott Williams home on June 6, 2018.

Regarding Appellant Scott Williams, this Court should (1) remand for additional proceedings concerning his motion to suppress evidence; (2) remand for the potential application of USSG § 4C1.1; and (3) remand with instructions to modify the conditions of supervised release concerning substance abuse and mental health treatment (or reverse his sentence and remand for complete resentencing if this Court determines that the additional language in the two challenged conditions did more than merely clarify ambiguity in the court's orally-pronounced conditions, *see* footnote 13, *supra*).

## REQUEST FOR ORAL ARGUMENT

Both Appellant Taeyan Raymond Williams and Appellant Scott Anthony Williams request oral argument. Oral argument would aid the decisional process of this Court.

Dated:  March 8, 2024                    Respectfully submitted,

*/s/ Alfred Guillaume, III*
Alfred Guillaume, III
Law Offices of Alfred Guillaume III
6305 Ivy Lane, Suite 700
Greenbelt, MD 20770
202-321-0549
ag3law@gmail.com

**Attorney for Appellant**
**Taeyan Raymond Williams**

*/s/ Brent Evan Newton*
Brent Evan Newton
Attorney at Law
19 Treworthy Road
Gaithersburg, MD 20878
(202) 975-9105
brentevannewton@gmail.com

**Attorney for Appellant**
**Scott Anthony Williams**